# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

TRIMLESS-FLASHLESS DESIGN,
INCORPORATED,
        *Plaintiff-Appellee,*

      v.

THOMAS & BETTS CORPORATION;
AUGAT, INCORPORATED,
        *Defendants-Appellants.*



No. 00-1572

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-00-245-A)

Argued: September 29, 2000

Decided: October 23, 2000

Before LUTTIG and WILLIAMS, Circuit Judges, and
Frederick P. STAMP, Jr., Chief United States District Judge
for the Northern District of West Virginia, sitting by designation.

---

Affirmed and remanded by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Jonathan Park Graham, WILLIAMS & CONNOLLY,
L.L.P., Washington, D.C., for Appellants. Paul Kirby Vickrey, NIRO,
SCAVONE, HALLER & NIRO, Chicago, Illinois, for Appellee. **ON
BRIEF:** Paul Mogin, Matthew J. Herrington, Jonathan M. Landy,

WILLIAMS & CONNOLLY, L.L.P., Washington, D.C., for Appellants. Amy S. Owen, RICHARDS, MCGETTIGAN, REILLY & WEST, P.C., Alexandria, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Thomas and Betts Corporation and Augat Inc. (collectively "Augat") appeal, pursuant to 9 U.S.C.A. § 16(a),[1] from an April 28, 2000 order denying Augat's motion to dismiss or in the alternative, to stay, pending arbitration, all proceedings in this action for misappropriation of trade secrets brought by Trimless-Flashless Designs Inc. (TFD). Augat argues that under applicable state law and the Federal Arbitration Act, 9 U.S.C.A. § 1 *et seq.* (West 2000), a provision in the parties' 1996 "Draft Outline Agreement" requires that some or all of the claims in this dispute be submitted to arbitration. Because we find that the three-word provision relied upon by Augat does not constitute an enforceable arbitration clause, we affirm.

### I.

TFD designs and develops molds, tooling, rubber and plastic formulae, and processes for customers in the rubber, plastics, and other industries. Augat is a subsidiary of Thomas and Betts Corporation and is in the business of producing electronic connectors and electrical interconnect products.

On October 23, 1995, Augat and TFD executed a "Proprietary Use and Nondisclosure Agreement" governing a product development rela-

---

[1]9 U.S.C.A. § 16(a) (West 1999) authorizes the taking of an interlocutory appeal from any order refusing to stay an action pending arbitration.

tionship.[2] This agreement, which did not contain an arbitration provision, contemplated collaboration in the development of "prototype and production molds" for Metalized Particle Interconnect (MPI) devices,[3] and barred Augat from disclosing or using confidential information belonging to TFD. TFD's complaint alleges that Augat violated the Nondisclosure Agreement.

On August 22, 1996, TFD signed and returned to Augat a "Draft Outline Agreement" that established a broader business relationship between the parties, explicitly referencing and incorporating the earlier Nondisclosure Agreement and providing a number of other terms. *See* J.A. at 19. At some point Augat signed this agreement; TFD maintains that Augat never returned an executed copy.

The Draft Agreement states that it "shall be effective unless and until replaced by a subsequent more comprehensive document." *See* J.A. at 19. It contains a number of provisions that are developed in some detail, followed by a list of short phrases, titled "Miscellaneous" and contained at § 6.0 of the agreement *et seq.* Among these phrases is § 6.4, which states, "Massachusetts Law Applies;" § 6.5, which states, "Arbitration of Disputes;" and § 6.6, which states, "Independent Contractors." J.A. at 22.

A successful MPI product ultimately was developed, and TFD asserts that during the process of developing this device, it disclosed substantial quantities of proprietary and confidential information to Augat in reliance on the Nondisclosure Agreement. After the development of a viable molding technology, TFD alleges that Augat informed TFD that it neither intended to purchase its molding technology from TFD, nor intended to engage TFD to produce the MPI devices, but instead planned to use another source. Augat is now selling MPI devices, that TFD asserts incorporate TFD's proprietary

---

[2]Augat apparently drafted this agreement, which was sent to TFD with a fax cover sheet, reproduced at J.A. 28, which stated, "look forward to going to the next level."

[3]Augat describes MPI devices as molded devices made from a compound of polymer material and metal particles, which conduct electricity and are used to connect packaged silicon computer chips to the circuitry of personal computer boards. *See* Brief of Appellants at 3.

trade secrets, thus giving rise to this action for misappropriation of trade secret information.

The district court found that § 6.5, the claimed "arbitration clause," was "not clear enough to constitute an agreement to arbitrate the issues raised" by TFD, J.A. at 137, and denied Augat's motion to dismiss or to stay all proceedings pending arbitration. *See* J.A. at 139. Augat argues that the Draft Agreement requires arbitration of all disputes that arise under the Draft Agreement and claims that TFD's suit, although pleaded exclusively in terms of the Nondisclosure Agreement, is so integrally related to the terms of the Draft Agreement as to fall within the scope of the Draft Agreement's arbitration clause. TFD contends that the Draft Agreement was never a valid contract or, in the alternative, that § 6.5 of the Draft Agreement is not a valid arbitration clause. We address each contention in turn.

## II.

We review a district court's denial of a motion to compel arbitration de novo. *See Cara's Notions v. Hallmark Cards, Inc.*, 140 F.3d 566, 569 (4th Cir. 1998). The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("the FAA"), creates a "'heavy presumption of arbitrability,'" such that "'when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration.'" *American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 92 (4th Cir. 1996) (quoting *People's Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989)). Arbitration is required if an arbitration clause is "'susceptible of an interpretation that covers the asserted dispute.'" *Porter Hayden Co. v. Century Indem. Co.*, 136 F.3d 380, 382 (4th Cir. 1998) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960)); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (stating that courts should resolve all doubts concerning the scope of arbitrable issues in favor of arbitration).

Nevertheless, "[a]rbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit." *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989).

"[T]he obligation to arbitrate is a creature of contract and . . . a party cannot be required to submit to arbitration unless he has agreed to do so in a contract." *Marrowbone Dev. Co. v. District 17*, 147 F.3d 296, 300 (4th Cir. 1998).

Federal law governs the interpretation of arbitration agreements even when a contract includes a general choice-of-law provision rendering effective the law of a certain state. *See Smith Barney, Inc. v. Critical Health Systems of North Carolina, Inc.*, 212 F.3d 858, 861 n.1 (4th Cir. 2000) (stating, in a case arising under agreement containing New York choice-of-law provision, that "[b]ecause arbitration contracts must be construed in accordance with federal law, we are not bound by New York state decisions"). State procedural rules governing arbitration may, however, be applied consistently with the FAA. *See Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 688 (1996).

Augat argues strenuously that the district court erred in denying its motion to dismiss or to stay all proceedings pending arbitration because § 6.5's lack of specificity can be cured under § 6.4 of the Draft Agreement through the application of state-law default rules, *see* Mass. Gen. Laws Ann. ch. 251, §§ 1-16 (West 2000), and by application of the liberal presumption in favor of arbitrability. Augat is correct in arguing that a very brief arbitration clause can indeed impose a requirement to arbitrate, to the extent that doubts about the scope of the clause can be resolved by the federal policy favoring arbitration, and the failure to specify procedures can be cured by applying specified default-rule procedures provided by state law. Nevertheless, this "arbitration clause" is unenforceable, not because § 6.5's scope is murky or because it fails to provide detailed procedures, but simply because the evidence does not indicate that the parties intended § 6.5 to be a binding, substantive, legally operative provision. Nor does the evidence indicate that reasonable persons would understand § 6.5 to be such. Section 6.5's brevity and place in the document tend to indicate that it is part of a list of undeveloped "open terms" that have the appearance of discussion items. Further, § 6.5 does not even contain a verb. It does not state, "Disputes shall be arbitrated," or "Arbitration of Disputes is Required," but merely, "Arbitration of Disputes." J.A. at 22. It has the appearance of a topic heading with no text and appears in the miscellaneous items section

of the Draft Agreement. Augat contends that custom and usage indicate that reasonable business persons would understand this provision to constitute a binding arbitration agreement. It seems evident, however, that reasonable business persons would signal their intention to require arbitration in a clearer fashion than is evidenced by this clause, read in context. *See*, *e.g.*, *Ford v. Nylcare Health Plans*, 141 F.3d 243, 246 (5th Cir. 1998) (enforcing clause that provided that "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof shall be settled by arbitration in accordance with the Texas General Arbitration Act"); *American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 90 (4th Cir. 1996) (enforcing arbitration clause that provided that "[a]ny dispute, controversy or claim arising out of or related to this . . . Agreement shall be resolved by binding arbitration"(emphasis omitted)). For these reasons, we hold that the three-word phrase in § 6.5 does not constitute an enforceable arbitration clause.

## III.

In further support of the district court's ruling, TFD argues that the entire Draft Agreement is too indefinite and contains too many open terms to be a valid contract. Resolution of this issue is inappropriate because Augat only appealed the district court's denial of its motion to stay proceedings pending arbitration. We need not resolve the question of whether the Draft Agreement is a valid contract because regardless of the answer, § 6.5 is not a valid arbitration clause. We decline to unnecessarily decide this interlocutory appeal on broad grounds potentially impacting the merits of the case when it is clear that the "arbitration clause" in the Draft Agreement is too indefinite and spectral to constitute a valid agreement to arbitrate disputes.

## IV.

We are mindful that "the federal policy favoring arbitration is not a free-standing ground upon which to remit parties to arbitration, but one that informs the court's interpretation" of the parties' agreement. *Brennan v. King*, 139 F.3d 258, 266 n.8 (1st Cir. 1998); *see also American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 92 (4th Cir. 1996) (noting that "[w]hether a party has agreed to arbitrate a dispute is a matter of contract interpretation"). Here, no

reasonable interpretation of the parties' agreement leads to the conclusion that § 6.5 constitutes an agreement to arbitrate disputes. The order of the district court denying Augat's motion to dismiss or to stay all proceedings pending arbitration is therefore affirmed and the case is remanded for further proceedings consistent with this opinion.

*AFFIRMED AND REMANDED*