820 So.2d 948 (2002)
RAMON PACHECO & ASSOC., INC., Appellant,
v.
BETANCOURT CASTELLON ASSOC., INC., Appellee.
No. 3D01-3361.
District Court of Appeal of Florida, Third District.
May 1, 2002.
Rehearing and Rehearing Denied July 19, 2002.
*949 Carlton Fields and Patricia H. Thompson, Miami, and Joseph H. Lang, Jr., St. Petersburg, and Carlos A. Zumpano, Miami, for appellant.
Stearns Weaver Miller Weissler Alhadeff & Sitterson, Fort Lauderdale, and David C. Pollack and Joy Spillis Lundeen, Miami, and Anastasia I. Kokotis, Orlando, for appellee.
Before LEVY, SHEVIN, and SORONDO, JJ.
Rehearing and Rehearing En Banc Denied July 19, 2002.
LEVY, Judge.
Appellant, Ramon Pacheco & Associates, Inc., ("Pacheco"), third-party defendant below, appeals from an Order denying its Motion for Stay and to Compel Arbitration contending that Appellee's, M & M Aerospace Hardware, Inc. ("M & M"), third-party claim for Indemnification is subject to the Mediation/Arbitration clauses in the parties' Agreement for architectural work.
Pacheco and M & M entered into an agreement for architectural work on the construction of a project. The agreement, in pertinent parts, provides:
MEDIATION.... Any claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party;
ARBITRATION.... Any claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to arbitration.
After completion of the architectural plans and specifications, M & M sought bids and subsequently entered into a separate contract with Betancourt Castellon Associates, Inc. ("BCA") for construction of the project. BCA, thereafter, brought suit against M & M alleging Breach of Contract, Breach of Implied Warranty of Fitness of Plans and Specifications, Foreclosure of Construction Lien, and Equitable Lien Foreclosure. With respect to the Breach of Contract claim, BCA specifically alleged that substantial changes were made to the contract plans and specifications initially provided to it which significantly increased the scope and duration of BCA's work. BCA also alleged that conflicts and deficiencies in the plans and specifications impacted the scope of duration of the work causing delays, loss of productivity, and overtime cost and expenses. *950 With respect to the Breach of Implied Warranty of Fitness of Plans and Specifications claim, BCA alleges, in part, that the "plans, specifications and related construction documents were inadequate incomplete and deficient."
As a result of BCA's Complaint against M & M, M & M filed a Third-Party Claim for Indemnification against Pacheco claiming that Pacheco was liable for any liability against M & M. In response, Pacheco filed a Motion to Stay Proceedings and for Arbitration claiming that the architectural contract executed between M & M and Pacheco requires arbitration. After a hearing on the matter, the trial court denied Pacheco's motion. We reverse.
The trial court relied on Seifert v. U.S. Home Corp., 750 So.2d 633 (Fla.1999) to deny Pacheco's Motion to Stay and for Arbitration. We find that Seifert is factually distinguishable from the instant case by virtue of the fact that in Seifert the builder was attempting to compel arbitration of a wrongful death claim brought by the homeowner. In the instant case, on the other hand, Pacheco seeks to compel arbitration of a third-party indemnification claim that arises out of allegations that the architectural design and specifications are faultythe very heart of the architectural agreement.
Seifert involved a wrongful death action by the wife of the deceased homeowner who died when the family car was left running in the garage and the air conditioning system of the house picked up and circulated the carbon monoxide emissions from the car. The Seiferts' home was built by U.S. Home pursuant to a contract for construction. Mrs. Seifert filed claims against U.S. Home for strict liability, negligence, and breach of express and implied warranties. After pre-trial motions, only the negligence claim remained which U.S. Home sought to submit to arbitration pursuant to an arbitration clause in the construction contract which provided that:
[a]ny controversy or claim arising under or related to this Agreement or to the Property ... or with respect to any claim arising by virtue of any representations alleged to have been made by the Seller or Seller's representative, shall be settled and finally determined by mediation or binding arbitration as provided by the Federal Arbitration Act ... and similar state statutes and not by a court of law.
Seifert, 750 So.2d at 635.
The Supreme Court of Florida in Seifert refused to compel arbitration on the wrongful death issue, finding that the claim did not arise out of the contract. Relying on a federal Fourth Circuit case, the Court explained that the "test for determining arbitrability of a particular claim under a broad arbitration provision is whether a `significant relationship' exists between the claim and the agreement containing the arbitration clause, regardless of the legal label attached to the dispute." Seifert, 750 So.2d at 637-38 (citing American Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 93 (4th Cir.1996)). After reviewing the arbitration clause and the Complaint before it, the Seifert Court found that there was no contractual nexus between the arbitration clause and the wrongful death claim. The Court explained that the contract was a standard commercial contract containing provisions relating to the duties and obligations of the parties with respect to the construction and sale of the house. The Court read nothing in the contract from which to infer that the parties intended to include tort claims within the scope of the arbitration agreement. Further, the Court found that the Complaint did not assert that U.S. Home's duties or obligations arose from or were governed by *951 the contract. In fact, the Court explained, the obligations raised by the allegations in the Complaint would extend to anyone, "third parties as well as the Seiferts, who might be injured by U.S. Home's tortious conduct." Seifert, 750 So.2d at 641. Consequently, the Court concluded that the wrongful death claim related to duties independent from the agreement and was therefore not subject to the arbitration.
In the case at bar, Pacheco and M & M entered into an agreement for architectural work which includes an arbitration clause providing that "[a]ny claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to arbitration." M & M was subsequently sued by BCA for defective and/or insufficient plans and specifications allegedly provided by Pacheco.
As a result of BCA's Complaint against M & M, M & M filed a Third Party Claim for Indemnification against Pacheco claiming that Pacheco was liable for any liability against M & M. The Third Party Complaint specifically alleges:
5. BCA has filed this action against M & M for Breach of Contract and Breach of Implied Warranty of Fitness of Plans and Specifications, seeking to recover damages allegedly arising "because the plans, specifications and related construction documents were inadequate, incomplete and deficient."
6. If BCA were to succeed in its claims against M & M because the trier of fact finds that "the plans, specifications and related construction documents were inadequate, incomplete and deficient," then Pacheco would be fully responsible for M & M's damages, because it provided the "plans, specifications and related construction documents" for the Project.
7. If BCA were to succeed in its claims against M & M, M & M's liability would be vicarious, technical or derivative in nature because it would be found responsible without fault on its part. Such fault, if any, would be exclusively or primarily Pacheco's. Thus, M & M would be entitled to indemnification, including reasonable attorneys' fees, interest, costs and expenses, from Pacheco.
M & M argues that the third-party Complaint does not reference the contract and simply seeks damages for losses M & M might suffer as a result of BCA's claims against it and, therefore, the claim does not arise out of, and is not related to, the contract. M & M's argument must fail, however, since an indemnity claim requires a legal relationship with the third-party defendant. See Brickell Biscayne Corp. v. Morse/Diesel, Inc., 683 So.2d 168 (Fla. 3d DCA 1996); Brickell Biscayne Corp. v. WPL Assoc., Inc., 671 So.2d 247 (Fla. 3d DCA 1996)(Florida courts have consistently premised the allowance of indemnity upon a special relationship between the primary defendant and the third-party defendant); see also Seaboard Coast Line Railroad Co. v. Smith, 359 So.2d 427 (Fla.1978) (noting that indemnity rests upon the fault of another which has been imputed to or constructively fastened upon the one seeking indemnity). The relationship between Pacheco and M & M arises out of the architectural agreement without which M & M would not be able to impose an obligation on Pacheco. The same architectural contract contains the arbitration clause in question here. Consequently, where BCA's claims relate to the adequacy or workmanship of the architectural designs and plans, the indemnity claim relates to the contract from which Pacheco's duty and obligation to provide adequate plans *952 arise.[1]
We find that Anderson-Parrish Assoc., Inc. v. City of St. Petersburg Beach, 468 So.2d 507 (Fla. 2d DCA 1985) is more analogous to the case at bar. In Anderson-Parrish, the city brought a third-party claim against the architects involved with one of the city projects after the general contractor filed suit against the city. The third-party claim was premised on the allegations that the architect failed to properly design and supervise construction of the project. The architectural firm sought arbitration of the claim pursuant to a clause in its contract with the city providing that "all claims, disputes and other matters in question between the parties ... arising out of or relating to this Agreement or the breach thereof, shall be decided by arbitration." The trial court denied the Motion to Arbitrate. See Anderson-Parrish, 468 So.2d at 508. On appeal, the Second District reversed.
The Court recognized the city's argument that its third-party Complaint sounds only in indemnification for recovery against the architectural firm for damages the city may be required to pay the contractor as a result of problems with architectural design. See Anderson-Parrish, 468 So.2d at 508. In finding that the third-party indemnity claim was subject to arbitration, the Court pointed out that the city's Complaint made direct allegations that the architectural firm failed to properly design and supervise construction as required by the contract. See Anderson-Parrish, 468 So.2d at 508-09. Although the relationship between the contract and the claim in Anderson-Parrish is clear since the city specifically referred to the contract in its Complaint, the Court in footnote 2 of the Anderson-Parrish opinion implies that the result would be the same even if the Complaint was limited to indemnity.
All of the architects' services concerning the fire station were performed for the city pursuant to a contract which included the quoted provision for arbitration of disputes. The allegations of the third-party complaint applicable to indemnification are predicated on the theory of faulty service. Therefore, it is possible that the architects may be entitled to arbitration even if the third-party complaint was limited to indemnity. Nevertheless, we need not, and we do not, reach this issue.
Anderson-Parrish, 468 So.2d at 508. We agree with, and extend, the Anderson-Parrish holding and find that the third-party indemnity claim at issue in the instant case is subject to the arbitration clause contained in the architectural agreement.
Pacheco also sought a Stay of the proceedings pending arbitration which the trial court denied. In light of the foregoing, we find that Pacheco's liability, if any, for deficient or insufficient architectural design, would only be in question in the event that M & M was liable to BCA because the architectural design and specifications were deficient or insufficient. See Post Tensioned Engineering Corp. v. Fairways Plaza Assoc., 429 So.2d 1212 (Fla. 3d DCA 1983)(holding that if an arbitrable issue is severable from the issue to *953 be litigated, a stay of proceedings need only encompass the severable issue). Accordingly, we reverse the Order denying Pacheco's Motion for Arbitration and to Stay Proceedings and remand the matter with instructions to stay the third-party action pending the outcome of the BCA/M & M lawsuit. At that time, if M & M is found to be liable to BCA for insufficient or defective architectural plans, then the issue of Pacheco's faulty workmanship should be submitted to arbitration.
Reversed and remanded with instructions.
NOTES
[1] M & M has suggested on appeal that BCA could have sued Pacheco directly and impeded Pacheco's ability to resort to the arbitration clause. However, the same reason that precludes Pacheco from raising the arbitration clause in defending a direct action from BCA, precludes BCA from suing Pacheco directly; the lack of contract between the parties and, therefore the absence of a relationship imposing a duty or obligation upon either party. The only relationship here exists between Pacheco and M & M and that relationship arises out of the contract containing the arbitration clause.