**CREATIVE TELECOMMUNICA-TIONS, INC., a Nevada Corporation, Plaintiff,**

v.

**John BREEDEN and Does 1–10 Defendant.**

**John Breeden, Third–Party Plaintiff,**

v.

**Clean Air Technologies, Inc., a Delaware corporation; William R. Simmons, individually and in his capacity as an officer and Director of Clean Air Technologies, Inc.; and Charles Baugh, individually and in his capacity as the acting CEO and Director of Clean Air Technologies, Inc. Third Party Defendants.**

**No. CIV. 98–01021 ACK.**

United States District Court, D. Hawaii.

Oct. 4, 1999.

1226

Gary W. Vancil, Gallup and Van Pernis, Kailua–Kona, HI, for Creative Communications, Inc., a Nevada Corporation, plaintiffs.

Francis Leon Jung, Jung & Vassar, Joseph Fagundes, III, Kailua–Kona, HI, for John Breeden, Does 1–10, defendants.

***ORDER DIRECTING THE PARTIES TO PROCEED WITH ARBITRATION OF PLAINTIFF'S CLAIMS AND DEFENDANT'S COUNTERCLAIMS AND THIRD–PARTY CLAIMS; STAYING ACTION PENDING ARBITRATION; DENYING THIRD–PARTY DEFENDANTS SIMMONS AND BAUGH'S MOTION FOR ORDER TO SHOW CAUSE AGAINST DEFENDANT/THIRD PARTY PLAINTIFF JOHN BREEDEN RE: BREEDEN'S 6/7/99 AFFIDAVIT***

KAY, District Judge.

### BACKGROUND

From 1996 through June 1998, John Breedon ("Defendant" and Third–Party

Plaintiff) was employed as Vice President and President of ComputerTime, Inc. ("ComputerTime"), a Hawaii corporation, engaged in the business of conceiving, designing, operating, maintaining, and retailing computer network hardware and software. Defendant was also the owner of fifty percent (50%) of the stock of ComputerTime.

On June 15, 1998, Defendant entered into an employment contract with ComputerTime, providing that he would perform the duties of President and Chief Operating Officer. William R. Simmons ("Simmons"), a Third–Party Defendant, signed the agreement on behalf of ComputerTime. From the record, it appears as though Simmons had no prior connection to ComputerTime. Rather, he was currently the Chairman of CTI and CATI.

On or about June 18, 1998, as President of, and on behalf of ComputerTime, Defendant entered into a Sale of Assets Agreement ("Agreement") with Plaintiff Creative Telecommunications, Inc. ("Plaintiff" or "CTI") and Third–Party Defendant Clean Air Technology, Inc. ("CATI") for the sale of specific assets of ComputerTime to Plaintiff and CATI. Defendant signed the Agreement as President of ComputerTime. Simmons signed the Agreement as the Chairman of both CATI and Plaintiff.

The Agreement provided for the sale of "all of the Sellers' [ComputerTime] assets" to the Buyer (CATI and Plaintiff). The Agreement further stated that "all the tangible corporate assets [of ComputerTime] are identified in Exhibit 'A' hereto." The Agreement's Exhibit "A" consists of (1) eight hand-written pages that list or identify items; and (2) a typed Inventory Value sheet. The ComputerTime shareholders, Defendant and Russell Smith, each received 500,000 shares of CATI common stock in exchange for the ComputerTime Assets.

The Agreement contains a number of Representations and Warranties. These warranties include, but are not limited to, a warranty that "Seller has all ownership rights to all the said tangible and intangible assets hereby conveyed"; that "Seller shall transfer, deliver to Buyer all documents of title or transfer necessary or desirable to perfect the transfer of the said corporate assets"; and that the said assets were free and clear of all Federal or State tax liability.

The Agreement also contains an arbitration clause:

> Any dispute, claim, or disagreement under or relating to this Agreement, shall be arbitrated according to the commercial arbitration rules of the American Arbitration Association, unless the parties agree, in writing, to a different form of arbitration. Such arbitration shall be binding arbitration.

Following the execution of the Agreement, ComputerTime allegedly assigned [1] Defendant's Employment Contract to Plaintiff whereby Defendant was bound to comply with its terms and conditions while and following employment by Plaintiff.[2] Defendant thereby employed Plaintiff as President of CTI until December 3, 1998,

---

1. Plaintiff contends that ComputerTime assigned this employment contract to Plaintiff following the execution of the Sale of Assets Agreement. See Pl.'s Am. Compl. ¶ 39. Defendant argued in a previous motion that the employment contract was not assignable. The contract, however, contains a clause that provides that it is assignable in connection with the sale of all of ComputerTime assets. See Pl./Countercl. Def.'s Mem. In Opp'n to Third–Party Pl.'s Mot. For Protective Order Filed Feb. 5, 1999, Ex. A. at ¶ 10. Such a sale took place pursuant to the Sale of Assets Agreement, executed on June 18, 1999.

2. Pursuant to the contract, Defendant agreed that he would neither make confidential information accessible to any direct competitor of ComputerTime or in any way provide the names of ComputerTime's customers to competitors. See Pl./Countercl. Def.'s Mem. In Opp'n to Third–Party Pl.'s Mot. For Protective Order Filed Feb. 5, 1999, Ex. A. at ¶ 6.

at which time CTI terminated Defendant.[3] *See* Pl's Am. Compl. ¶ 28.

Plaintiff filed a Complaint naming Mr. Breedon as Defendant on December 30, 1998. On January 15, 1999, Plaintiff applied for a temporary restraining order, preliminary injunction, and permanent injunction. The parties subsequently stipulated that Defendant would not trespass upon Plaintiff's property or access Plaintiff's computers or other equipment.

On February 8, 1999, Defendant filed a Motion to Dismiss Counts III through VIII of the Complaint for Failure to State a Claim For Which Relief May be Granted or in the Alternative for Summary Judgment. On March 15, 1999, this Court granted Defendant's motion for summary judgment as to Count III ("Breach of Contract")[4]; denied Defendant's motion as to Count IV ("Negligence") and the Breach of Confidentiality claim in Count VIII; and granted Defendant's motion to dismiss without prejudice, giving Plaintiff leave to amend the Complaint, as to Counts V ("Unjust Enrichment"), VI ("Conversion and Breach of Fiduciary Duty"), VII ("Fraud"), and the Slander claim of Count VIII.

On April 14, 1999, Plaintiff filed an Amended Complaint. In the Amended Complaint, Plaintiff alleges that Defendant: (1) committed trespass and intentionally damaged Plaintiff's property; (2) received CATI stock as consideration for the Sale of Assets Agreement, which the Court should declare nullified or canceled; (3) was negligent in his dealings with Plaintiff; (4) was unjustly enriched as a result of his conduct; (5) converted various assets and money belonging to Plaintiff and breached his fiduciary duty to Plaintiff during his employment as President of CTI; (6) committed fraud against Plaintiff; (7) by committing slander and breaching confidentiality, breached his employment contract with CTI; and (8) should pay punitive damages. Plaintiff's relief sought includes, but is not limited to, preliminary and permanent injunctive relief, declaratory relief, and punitive damages.

Defendant filed a Counterclaim and Third–Party Complaint on January 26, 1999, naming CATI; Simmons, individually and in his capacity as an officer and Director of CATI; and Charles Baugh ("Baugh"), individually and in his capacity as the acting CEO and Director of CATI, as Third–Party Defendants. Defendant alleges that: (1) Plaintiff and CATI, through the oral and written representations of Baugh and Simmons, committed libel and slander per se; (2) these actions were committed with the intent to inflict emotional distress upon Defendant and did inflict such distress; (3) Plaintiff and Third–Party Defendants invaded Defendant's privacy; (4) Plaintiff and Third–Party Defendants converted Defendant's personal property; and (5) Plaintiff and Third–Party Defendants breached their fiduciary duty to Defendant, a shareholder of CATI. On March 15, 1999, the Court granted Third–Party Defendants' Motion to Dismiss Breedon's Third–Party Com-

---

3. The Court notes that although Plaintiff alleges that it employed Defendant as its corporate president, Defendant's termination notice states that "your Employment Agreement with Computertime, Inc. is hereby terminated." Def.'s Mot. for Partial Summ. J. Re: Counts I and II of Countercl. And Third–Party Compl., Ex. 2. In any event, Defendant was employed under the terms of his employment agreement. Defendant apparently received pay checks from CATI's office in California. *See* Affidavit of Jerud Wayne Ryker II. CTI is a wholly owned subsidiary of CATI.

4. The Court determined that Plaintiff's Count III "alleges sufficient facts to set forth a claim for breach of contract by way of piercing the corporate veil" to survive Defendant's Motion *to Dismiss*. Order Granting in Part and Den. in Part Def. John Breeden's Mot. to Dismiss Counts III through VIII of the Compl. for Failure to State a Claim For Which Relief May be Granted or in the Alternative for Summ. J., March 15, 1999, at 10. The Court, however, granted summary judgment as to this claim because Plaintiff did not produce evidence to support this allegation sufficient to withstand summary judgment. *See id.* at 10–11.

plaint Count V ("Breach of Fiduciary Duty") as to his derivative cause of action, without prejudice, with leave to amend within 30 days. Defendant did not make any such amendment.

Defendant filed an Answer to Plaintiff's Amended Complaint on April 28, 1999.

On June 8, 1999, Defendant filed a Motion for Partial Summary Judgment Against Plaintiff and Third–Party Defendants Regarding Counts I and II of the Counterclaim and Third–Party Complaint. On that same day, Defendant filed a Concise Statement of Material Facts in Support of his motion. Plaintiff and Third–Party Defendants filed a Memorandum in Opposition on June 18, 1999, supported by a Concise Statement of Facts. On June 25, 1999, Defendant filed a Reply Memorandum.

On June 22, 1999, Third–Party Defendants Simmons and Baugh filed a Motion for Partial Summary Judgment Regarding Counts I and II of the Third–Party Complaint. Defendant filed a Memorandum in Opposition on September 2, 1999. Third–Party Defendants Simmons and Baugh filed a Reply on September 9, 1999.

On June 22, 1999, Third–Party Defendants Simmons and Baugh also filed a Motion for Order to Show Cause Against Defendant/Third–Party Plaintiff Breedon Regarding Breedon's 6/7/99 Affidavit. Defendant Breeden filed a Memorandum in Opposition on September 2, 1999. Third–Party Defendants filed a Reply on September 8, 1999.

On August 18, 1999, Plaintiff and Third–Party Defendants CATI, Simmons, and Baugh filed a Motion to Bifurcate and For Arbitration. Defendant filed a Memorandum in Opposition on September 2, 1999. Plaintiff and Third–Party Defendants filed a Reply on September 8, 1999. The Court heard oral argument on September 20, 1999.

Thus, four motions are before the Court: (1) Plaintiff and Third–Party Defendants CATI, Simmons, and Baugh's Motion to Bifurcate and For Arbitration; (2) Defendant's Motion for Partial Summary Judgment Against Plaintiff and Third–Party Defendants Regarding Counts I and II of the Counterclaim and Third–Party Complaint; (3) Third–Party Defendants Simmons and Baugh's Motion for Partial Summary Judgment Regarding Counts I and II of the Third–Party Complaint; and (4) Third–Party Defendants Simmons and Baugh's Motion for Order to Show Cause Against Defendant/Third–Party Plaintiff Breedon Regarding Breedon's 6/7/99 Affidavit.

Because a decision finding Plaintiff's and Defendant's claims arbitrable will render the parties' Motions for Partial Summary Judgment improper for judicial determination, the Court will examine the issue of arbitrability first.

### DISCUSSION

**I. THE PARTIES ARE COMPELLED TO ARBITRATE PLAINTIFF'S CLAIMS AND DEFENDANT'S COUNTERCLAIMS AND THIRD–PARTY CLAIMS**

In deciding whether the parties' disputes are arbitrable, it is necessary for the Court to analyze two distinct issues: (1) whether the Federal or Hawaii Arbitration Act applies; and (2) whether Defendant and Third–Party Defendants Baugh and Simmons are subject to the arbitration clause as ComputerTime, CTI, and CATI agents, officers, or representatives. The Court has considered each of these issues, and finds that the Federal Arbitration Act requires that the parties arbitrate all of Plaintiff's Counts and Defendant's Counterclaims and Third–Party claims, and that this case be stayed pending arbitration.

#### A. Federal Arbitration Law

The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

equity for the revocation of any contract." 9 U.S.C. § 2.

Section 4 of the Act provides that the United States district court "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement" if the court, after hearing the parties, is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." *Id.* § 4. The Court must stay trial of the action provided that "the applicant for the stay is not in default in proceeding with such arbitration." *Id.* § 3. The FAA applies to all contracts involving commerce. *See id.* § 2.

Thus, there are four criteria in determining whether the FAA applies to the Agreement at issue in this case: (1) there must be a written provision for arbitration in the Agreement; (2) the Agreement must evidence a transaction involving commerce; (3) the party seeking to compel arbitration must not be in default in proceeding with such arbitration; and (4) the Court must be satisfied that the issues involved in the action are referable to arbitration under the Agreement. *See id.* §§ 1–4. Applying this criteria, it is clear that the FAA applies to the instant action.

### 1. The Agreement Contains a Written Arbitration Provision and Involves Commerce

First, it is undisputed that a written provision for arbitration is included in the Agreement. Second, the Agreement clearly evidences a transaction involving commerce. The FAA defines "commerce" as including "commerce among the several states." *Id.* § 1. "[B]ecause of the strong policy favoring arbitration, the requirement of 'evidencing a transaction involving commerce' must be construed broadly," and includes activities that merely affect interstate commerce. *Snyder v. Smith,* 736 F.2d 409, 417 (7th Cir.1984); *see also Allied–Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 273–74, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); *Hodel v. Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 276–77, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981). The FAA's reach in this regard is thus very broad, extending to the limits of Congress' commerce clause power. *Allied–Bruce,* 513 U.S. at 273–74, 115 S.Ct. 834.

In the instant case, Plaintiff is a Nevada corporation and resident and citizen of the State of Nevada, registered to engage in business in the State of Hawaii. *See* Pl.'s Am. Compl. ¶ 1. Plaintiff CTI, an Internet Service Provider, provides Internet access to customers in both Hawaii and California. Third–Party Defendant CATI is a Delaware corporation engaged in business in the State of Hawaii, and has offices in California. Defendant and Third–Party Defendants Simmons and Baugh are residents of the State of Hawaii. The Agreement involves the transfer of assets of a Hawaii corporation to a Nevada corporation and the transfer of a Deleware corporation's stock. Thus, it is evident that "commerce" is involved as defined by the FAA.[5]

### 2. Waiver

The third criterion for the application of the FAA is also met in the present

---

5. Plaintiff notes that given the nature of the underlying transaction—the mere transfer of ownership of assets remaining at a fixed location—it does not appear that the Sale of Assets Agreement is a contract evidencing a transaction involving commerce. Even if the FAA does not apply to the instant case, however, the requirements of the FAA and HRS § 658–5 are virtually identical. *Compare* 9 U.S.C. § 3 *with* HRS § 658–5. HRS § 658–5 provides:

> If any action or proceeding is brought upon any issue referable to arbitration under an agreement in writing, the circuit court, upon being satisfied that the issue involved in the action or proceeding is referable to arbitration under such an agreement in writing, shall stay the trial of the action or proceeding until the arbitration has been had in accordance with the terms of the agreement, provided the applicant for the stay is not in default in proceeding with the arbitration.

case, as Plaintiff is neither in default in proceeding with arbitration, nor has waived any right to arbitrate.

"Whether a party has waived its right to arbitration by its conduct is a purely legal question which the district courts have broad discretion in deciding." *Herko v. Metropolitan Life Ins. Co.*, 978 F.Supp. 141, 148 (W.D.N.Y.1997) (citing *Leadertex, Inc. v. Morganton Dyeing and Finishing Corp.*, 67 F.3d 20, 25 (2d Cir.1995)).

■ To prove that a waiver of arbitration exists, a party must demonstrate "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Letizia v. Prudential Bache Securities*, 802 F.2d 1185, 1187 (9th Cir.1986). The party arguing waiver "bears a heavy burden of proof." *Fisher v. A.G. Becker Paribas, Inc.*, 791 F.2d 691, 694 (9th Cir.1986). Any doubts as to waiver are resolved in favor of arbitration. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is ... an allegation of waiver, delay, or a like defense to arbitrability."); *Leadertex*, 67 F.3d at 25.

■ The Ninth Circuit has determined that waivers of contractual rights to arbitration "are not favored." *Letizia*, 802 F.2d at 1187. Thus, to waive arbitration rights, a party must "substantially invok[e] the litigation machinery" in such a way as to prejudice the other party. *E.C. Ernst, Inc. v. Manhattan Construc. Co.*, 559 F.2d 268, 269 (5th Cir.1977); *see also Doctor's Assoc., Inc. v. Distajo*, 66 F.3d 438 (2d Cir.1995); *ATSA of California, Inc. v. Continental Ins. Co.*, 702 F.2d 172 (9th Cir.1983) ("[U]nder the federal policy favoring arbitration, a party does not waive arbitration merely by engaging in action inconsistent with an arbitration provision";

rather, the party opposing arbitration must have suffered prejudice). If there is any ambiguity as to the scope of the waiver, the court must resolve the issue in favor of arbitration. *See Mercury Constr.*, 460 U.S. at 24–25, 103 S.Ct. 927; *see also National Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 774 (D.C.Cir.1987). Moreover, "even if a district court finds an initial waiver of the right to arbitrate, it is also entitled to permit that waiver to be rescinded, depending on the course the litigation takes." *Iowa Grain Co. v. Brown*, 171 F.3d 504, 509–10 (7th Cir.1999); *see also Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir.1995).

■ Courts have found that the filing of a complaint, an answer, a counterclaim or a third-party complaint does not waive the right to pursue arbitration. *See, e.g., Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 981–83 (4th Cir.1985) (finding no waiver where defendant filed third-party complaint and engaged in discovery); *Sauer–Getriebe KG v. White Hydraulics, Inc.*, 715 F.2d 348, 350 (7th Cir.1983) (finding no waiver by filing suit); *Herko v. Metropolitan Life Ins.*, 978 F.Supp. 141, 148 (W.D.N.Y.1997) (finding no waiver where defendant answered without asserting right to arbitration and delayed 18 months in seeking this right); *In re Interactive Video Resources, Inc.*, 170 B.R. 716, 721 (S.D.Fla.1994) (finding no waiver where defendant filed pleadings, a counterclaim, and motions, and did not request arbitration until court ordered briefing on the issue, although behavior was inconsistent with right to arbitrate). Moving for a protective order, participating in pre-trial discovery, or filing a motion to dismiss similarly do not alone waive a party's right to arbitrate. *See, e.g., American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 96 (4th Cir.1996) (finding no waiver where party filed declaratory judgment action and participated in discovery); *L.A. Adams v. Merrill Lynch, Pierce, Fenner & Smith*, 888 F.2d 696,

701–02 (10th Cir.1989) (finding no waiver where party delayed one year and engaged in expensive and time-consuming discovery); *Rush, III v. Oppenheimer & Co.*, 779 F.2d 885, 889 (2d Cir.1985) (finding no waiver where defendant filed an answer with no mention of arbitration right, filed a motion to dismiss, participated in discovery, and failed to seek arbitration for eight months); *Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 460–63 (2d Cir.1985) (finding no waiver where defendant filed motion to dismiss, despite two-year delay in seeking arbitration); *Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 419–21 (5th Cir.1985) (finding no waiver where defendant filed an answer noting its right to arbitration, participated in discovery, moved for a protective order, and waited eight months to seek arbitration); *Lake Communications, Inc. v. ICC Corp.*, 738 F.2d 1473, 1477 (9th Cir.1984) (finding no waiver where defendant filed motion to dismiss and failed to seek arbitration until more than one year after the complaint was filed), *overruled on other grounds, Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 632–35, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Marlin Oil Corp. v. Colorado Interstate Gas Co.*, 700 F.Supp. 1076, 1080–81 (W.D.Okla.1988) (finding no waiver where party instituted declaratory judgment action and filed motion to dismiss).

■ Although the waiver determination "necessarily depends upon the facts of the particular case and is not susceptible to bright line rules," *Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir.1993), courts usually consider the amount of litigation, the time elapsed from the commencement of litigation to the request for arbitration, and the proximity of a trial date when arbitration is sought. *See Leadertex*, 67 F.3d at 25. "Whether the party filing the lawsuit intended to elect a judicial forum rather than the arbitral tribunal" is an additional factor. *Brown*, 171 F.3d at 509. The Third Circuit has also listed a number of other considerations:

"Also relevant to the waiver inquiry is the degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims; **whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings;** the extent of its non-merits motion practice; its assent to the district court's pretrial orders; and the extent to which both parties have engaged in discovery."

*PaineWebber, Inc. v. Faragalli*, 61 F.3d 1063, 1069 n. 4 (3d Cir.1995) (emphasis added).

Courts have found waiver where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate, such as by filing substantive motions. *See, e.g., PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 108–09 (2d Cir.1997) (finding waiver where party engaged in discovery and filed substantive motions in related action based on same facts); *St. Mary's Med. Ctr., Inc. v. Disco Aluminum Prod. Co., Inc.*, 969 F.2d 585, 588 (7th Cir.1992) (finding waiver where party moved to dismiss and for summary judgment without mentioning arbitration until after motions were lost); *Com–Tech Assoc. v. Computer Assoc. Int'l, Inc.*, 938 F.2d 1574, 1576 (2d Cir.1991) (finding waiver where party filed pre-trial motions including one for partial summary judgment and motion to compel, engaged in discovery, and asserted arbitration right only four months before scheduled trial); *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir.1988) (finding waiver where party "chose ... to litigate actively the entire matter—including pleadings [answer to the complaint and amended complaint], motions, and approving a pretrial conference order—and did not move to compel arbitration until more than two years after the appellants brought the action"); *Fraser v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 817 F.2d 250 (4th Cir.1987) (finding sufficient

prejudice to support waiver where brokerage firm delayed four and one-half years before seeking arbitration, two trial dates had passed, and opposing party was required to respond to motion for partial summary judgment and three motions to dismiss); *Price v. Drexel Burnham Lambert, Inc.,* 791 F.2d 1156, 1162 (5th Cir. 1986) (finding waiver where defendant filed motion to dismiss and for summary judgment, as plaintiff was prejudiced by the expense in having to defend motions); *Bengiovi v. Prudential–Bache Sec., Inc.,* [1984–95 Transfer Binder], 1985 WL 2143, Fed.Sec.L.Rep. (CCH) ¶ 92,012, at 91,013 (D.D.C. April 26, 1985) (finding waiver where plaintiff was "required to produce documents, answer deposition questions, and file an opposition to the summary judgment motion" and did not move for arbitration until four and one-half weeks before trial); *Weight Watchers of Quebec v. Weight Watchers Int'l,* 398 F.Supp. 1057, 1060–61 (E.D.N.Y.1975) (finding waiver where party answered on merits, filed motion for summary judgment, and did not request arbitration until court decided motion).

In *Herko,* the Western District of New York determined that defendants did not waive arbitration, as "neither side has engaged in the level of protracted litigation with the potential for substantial amounts of wasted legal costs that would necessitate finding [waiver]." *Herko,* 978 F.Supp. at 148. The court's comments distinguishing *Com–Tech,* wherein the Second Circuit found the defendants waived their right to arbitration, are very telling:

> Com–Tech is distinguishable from the instant case as there the court noted that the defendants had also subjected the plaintiff to the expense and time

involved in conducting extensive depositions and defending several pre-trial motions, including motions for judgment on the pleadings and for partial summary judgment, and that the motion to compel arbitration was brought only four months before the scheduled trial date. Here, **Defendants have not made any motions,** other than the present motion to compel arbitration. Additionally, discovery is only in the initial stage and no trial date has yet been set.

*Id.* (citation omitted) (emphasis added).

In the instant case, Plaintiff has not made any substantive motions, save that for a temporary restraining order and the instant Motion to Bifurcate and for Arbitration.[6] Although the amount of litigation in this case is not minimal, little of the litigation has been generated by Plaintiff. Rather, Plaintiff has merely responded to Defendant's motions: (1) Defendant's Motion to Dismiss or in the Alternative for Summary Judgment of February 8, 1999; (2) Defendant's motion for a protective order; (3) Defendant's Motion for Partial Summary Judgment Regarding Counts I and II of the Counterclaim and Third–Party Complaint; and Plaintiff filed an Answer to Defendant's Counterclaim.[7] Moreover, Plaintiff raised its right to arbitration in the instant motion. Additionally, the Court finds it significant that Plaintiff included in both the Original and Amended Complaint a request "[f]or arbitration of such matters as are arbitrable under the Sale of Assets Agreement." Pl.'s Am. Compl. ¶ 3, p. 13; *see also id.* ¶ 18, p. 5. This reservation put Defendant on notice of Plaintiff's desire to seek arbitration, and factors against Defendant claiming prejudice for Plaintiff's delay in filing the instant motion.[8]

---

6. Plaintiff also made an Ex Parte Motion for Order Shortening Time for Hearing on Plaintiff's 1) Motion to Enforce Stipulated Order for Preliminary Injunction; and 2) Motion for mandatory Injunction and/or for Expedited Deposition of Defendant John Breedon.

7. The Court notes that Plaintiff did not raise its arbitration rights in any of its Opposition Memoranda to Defendant's various motions.

8. Defendant may claim that he remains prejudiced despite Plaintiff's reservation because he assumed that Plaintiff waived its right to seek arbitration by participating in the instant

Regarding the time elapsed prior to re-questing arbitration, Plaintiff filed the instant motion slightly less than eight months after litigation began, and nearly six months before trial was scheduled to begin.[9] The parties have engaged in discovery, including disclosing expert witness information pursuant to Federal Rule of Civil Procedure 26(2), and initial disclosures pursuant to Rule 16(b)(4) and Local Rule 26.1(a)(1) were due July 6, 1999. Furthermore, Plaintiff deposed Defendant. The Court does not find this amount of discovery sufficient to prejudice Defendant.

Defendant asserted at oral argument that the Court's Order Granting Partial Summary Judgment on Count III of Plaintiff's Claim precludes the Court from compelling the parties to undergo arbitration. This is simply untrue. Although this Court ruled on Count III such that this claim is no longer arbitrable, there remain issues that nonetheless must be arbitrated according to the Agreement. Furthermore, as previously mentioned, there are no bright-line rules governing waiver determinations; ruling on a summary judgment motion does not mandate a finding of waiver. *See Cotton,* 4 F.3d at 179; *cf. Rush, III,* 779 F.2d at 889 (finding no waiver where party made motion to dismiss); *Lake Communications,* 738 F.2d at 1477 (same), *overruled on other grounds, Mitsubishi Motors,* 473 U.S. at 632–35, 105 S.Ct. 3346; *Com–Tech,* 938 F.2d at 1576 (finding waiver where party filed pre-trial motions including one for summary judgment, but Court considered a number of factors; summary judgment motion was not determinative factor in waiver inquiry). *But see Sweater Bee,* 754 F.2d at 465 (noting in dicta that the effect of summary judgment is "to preclude any arbitration of the issue by virtue of waiver," citing *Weight Watchers,* 398 F.Supp. at 1060–61, in which it was the party seeking arbitra-tion that had previously moved for summary judgment). None of the cases this Court reviewed found that a summary judgment motion was determinative in finding a waiver. Moreover, in all of the previously cited cases where waiver occurred, it was the party seeking arbitration that filed the motion for summary judgment. Here, Plaintiff merely opposed Defendant's motions and did not file any of its own substantive motions.

Thus, the Court finds that even if Plaintiff acted in a manner inconsistent with its right to seek arbitration by pursuing litigation, Defendant was not prejudiced by Plaintiff's delay in seeking this right. Plaintiff has not subjected Defendant to significantly expensive or time-consuming litigation; Plaintiff asserted its right to arbitrate after only an eight month delay, nearly six months before the scheduled trial; and Plaintiff noticed Defendant of its desire to arbitrate upon filing the original Complaint, and did so again in the Amended Complaint. Moreover, Defendant has failed to plead prejudice.

The Court similarly finds that Third–Party Defendants have not waived their rights to seek arbitration. Here, it is important to note that Simmons and Baugh, in addition to responding to Defendant's motions and filing an Answer without asserting the arbitration right, filed a Motion to Dismiss and a Motion for Summary Judgment Regarding Counts I and II of the Third–Party Complaint. The Court, however, does not find this action determinative of the waiver inquiry. Rather, the Court finds that Defendant has not suffered any prejudice. This is especially true in light of the fact that Defendant himself filed a Motion for Summary Judgment regarding the same Counts. Thus, Defendant has not been forced to undergo any significant additional expenses or delays.

litigation. However, Defendant has failed to demonstrate prejudice, and the Court finds none, despite this theoretical possibility.

9. On April 5, 1999, the Court scheduled trial for February 15, 2000.

The Court therefore finds that the third criterion for determining whether the FAA applies is satisfied: neither Plaintiff nor Third–Party Defendants have waived their right to seek arbitration, and are thus not in default in proceeding with such.

### 3. *Arbitrable Issues*

Finally, in satisfaction of the fourth requirement of the FAA, there are issues involved in this case that are referable to arbitration. Both Plaintiff's Complaint and Defendant's Counterclaim and Third–Party Complaint contain disputes that are under or relate to the Sale of Assets Agreement and therefore fall under the Agreement's broad arbitration clause.

The Supreme Court has determined that the court should decide whether a party decided to arbitrate a certain matter unless the parties clearly and unmistakably provide otherwise. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *AT & T Tech., Inc. v. Communications Workers of America,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Where an arbitration agreement is silent on who decides arbitrability, the court must decide this issue. *First Options,* 514 U.S. at 944, 115 S.Ct. 1920; *United Brotherhood of Carpenters and Joiners of America v. Desert Palace, Inc.,* 94 F.3d 1308, 1310 (9th Cir.1996). Thus, "where there is a legitimate disagreement over the scope or coverage of the arbitration clause itself, [and] it is unclear whether the parties have contracted for arbitration of the particular dispute ... a court must decide that question." *Brotherhood of Teamsters and Auto Truck Drivers v. Interstate Distributor Co.,* 832 F.2d 507, 509 (9th Cir.1987).

■ When determining whether a particular dispute is arbitrable, the court must apply the "federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Mercury Constr.,* 460 U.S. at 24, 103 S.Ct. 927. This body of law dictates that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Id.* Thus, following a federal policy that strongly favors arbitration, courts liberally construe agreements to arbitrate in favor of arbitration. *See Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *Mercury Constr.,* 460 U.S. at 24, 103 S.Ct. 927; *PaineWebber, Inc. v. Hartmann,* 921 F.2d 507, 512–13 (3d Cir.1990) ("Genuine interpretive disputes should be resolved in favor of arbitrability.").

■ The party opposing arbitration "shoulders a heavy burden of proving ... 'with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " *Envirex, Inc. v. K.H. Schussler Fur Umwelttechnik,* 832 F.Supp. 1293, 1297 (E.D.Wis.1993) (quoting *United Steelworkers of America v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). When interpreting the scope of an arbitration clause, there must be a clearly expressed intent not to arbitrate an issue before the issue can be ruled one for judicial determination. *See Hussey Metal Division v. Lectromelt Furnace,* 471 F.2d 556 (3d Cir. 1972); *Singer Co. v. Tappan Co.,* 403 F.Supp. 322 (D.N.J.1975), *aff'd* 544 F.2d 513 (3d Cir.1976). The court therefore "should refer all issues not clearly outside the scope of the agreement to an arbiter." *Envirex,* 832 F.Supp. at 1297.

■ The Supreme Court has determined that when in doubt, courts should rule in favor of arbitrability when deciding the applicability of an arbitration clause:

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or an allegation of waiver, delay, or a like defense to arbitrability.

*Mercury Constr.*, 460 U.S. at 24–25, 103 S.Ct. 927. Thus, courts should "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).[10]

In the present case, the Agreement's arbitration clause provides that "[a]ny dispute, claim, or disagreement under or relating to this Agreement, shall be arbitrated." The Supreme Court has determined that a similar arbitration clause is extremely broad and encompassing.[11] *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 398, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (analyzing "arising under" arbitration clause). The strong presumption in favor of arbitrability "applies with even greater force" with such a broad arbitration clause, giving rise to a presumption of arbitrability which is overcome only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Warrior and Gulf Navigation Co.,* 363 U.S. at 582–83, 80 S.Ct. 1347; *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 121 (2d Cir.1991). Here, it is clear that the parties

intended to include all disputes regarding the assets sold.

▮ Plaintiff and Third–Party Defendants Baugh and Simmons claim that Plaintiff's Counts III—VII fall under the Agreement's arbitration clause, as well as Defendant's Counterclaims and Third–Party claims.[12] The Court agrees. Furthermore, the Court finds that Plaintiffs Counts I, II and VIII also fall within the scope of the arbitration agreement.

Defendant claims that none of the issues are arbitrable because they are tort claims as opposed to contract claims. This is simply untrue. *See P & P Indus., Inc. v. Sutter Corp.,* 179 F.3d 861, 871 (10th Cir. 1999) (holding that tort-based claims "arise out of, or relate to the Agreement" and therefore are arbitrable); *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.,* 863 F.2d 315, 321 (4th Cir.1988) (finding claims for unfair trade practices, libel, and defamation included in arbitration clause, noting that the clause "embraces every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dis-

---

10. Similarly, it is well settled in Hawaii that arbitration is regarded as a favored means of conserving judicial resources and minimizing costly and lengthy trials. See *Gadd v. Kelley,* 66 Haw. 431, 667 P.2d 251, 252 (1983) ("The proclaimed public policy [of HRS § 658] is to encourage arbitration as a means of settling differences and thereby avoid litigation."); *Beclar Corp. v. Young,* 7 Haw.App. 183, 750 P.2d 934, 939 (1988) ("As a matter of public policy established by the legislature in HRS chapter 658 arbitration is to be encouraged as a method of resolving differences, thereby avoiding litigation."). Additionally, the Supreme Court of Hawaii promulgated the Hawaii Arbitration Rules, which reinforce the public policy of encouraging arbitration and have expanded the role of arbitration as a vehicle for resolving disputes, in response to concerns over increased litigation and delays. *See Beclar Corp.,* 750 P.2d at 939.

11. The Court notes that the Ninth Circuit has determined that arbitration clauses providing for any disputes "arising hereunder" or "arising out of" the agreement are "considerably more narrow in scope" than "in connection with" language. *Simula, Inc. v. Autoliv, Inc.,*

175 F.3d 716, 720 n. 3 (9th Cir.1999). Here, the contract provides for the arbitration of disputes "under or relating to" the Agreement. The Ninth Circuit gives a much broader interpretation of a "relating to" arbitration clause. *See Tracer Research Corp. v. National Environmental Services,* 42 F.3d 1292, 1295 (9th Cir.1994) (noting "the omission of the 'relating to' language is significant," finding arbitration clause more narrow without this language) (citing *Mediterranean Ent., Inc. v. Ssangyong Corp.,* 708 F.2d 1458, 1463–64 (9th Cir.1983)).

12. The Court notes that although "arbitrability is to be determined on an issue-by-issue basis, without regard to the way that the issues are grouped into claims," *see Summer Rain v. Donning Co./Publishers, Inc.,* 964 F.2d 1455, 1461 (4th Cir.1992), in this case, the parties have sufficiently grouped the issues into claims such that the Court may decide arbitrability on a claim-by-claim basis. Accordingly, the Court is following the parties' grouping of the issues.

**1238**

pute") (quoted and cited in *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999)).

### a. *Plaintiff's Claims*

 Plaintiffs Counts I—VIII either incorporate, refer to, or relate to the Sale of Assets Agreement. Specifically, Plaintiff's Count II ("Declaratory Relief") relates to the controversy concerning the parties' respective rights to the shares of CATI stock that were exchanged for the sale of ComputerTime assets as per the Sale of Assets Agreement.[13] *See* Pl.'s Am. Compl. ¶ 13. Plaintiff's "Negligence" claim (Count III) includes, but is not limited to, allegations that Defendant "made contractual Representations and Warranties on behalf of ComputerTime to Plaintiff CTI as to material facts which would reasonably affect a prudent investor's decision to purchase any of the said assets," and that Defendant misrepresented facts relating to the amount and value of the assets to be sold. *See* Pl.'s Am. Compl. ¶¶ 20–21. Plaintiff's "Fraud" Claim (Count VI) is similar, in that it alleges that Defendant made false representations to Plaintiff to induce the latter to enter into the Sale of Assets Agreement. Plaintiff's "Unjust Enrichment" Claim (Count IV) asserts that if the trier of fact finds that ComputerTime's relationship with CTI and/or CATI respecting the Agreement was not governed by the Agreement, Defendant was unjustly enriched, for which Plaintiff should be equitably compensated.[14] Plaintiff's request for "Punitive Damages,"

Count VIII,[15] also falls within the scope of the Agreement, and thus is arbitrable. All of these claims clearly are "under or relating to" the Sale of Assets Agreement.

Plaintiffs Counts I, V, and VII relate to Defendant's employment contract. Plaintiff's Count I ("Trespass and Intentional Damage to Property" in violation of 18 U.S.C. § 1030) alleges, in part, that Defendant obtained unauthorized access to Plaintiff's computers and in doing so caused damage to Plaintiff's computer systems. Plaintiff's Count V ("Conversion and Breach of Fiduciary Duty") alleges that Defendant breached his fiduciary duty as President of CTI, converted CTI property, and misrepresented the debts of ComputerTime in the Sale of Assets Agreement. *See* Pl.'s Am. Compl. ¶¶ 30–31. Plaintiff's Count VII, "Breach of Confidentiality and Slander," alleges that Defendant breached his employment contract with CTI.

Defendant entered into an employment contract with ComputerTime on June 15, 1998, just three days prior to the execution of the Sale of Assets agreement. CTI counsel drafted Defendant's employment contract, and a CTI officer signed the contract.[16] Mr. Smith, who owned 50% of the shares of ComputerTime (Defendant owned the remaining 50%), did not sign the employment contract. Plaintiff alleges that this contract was later assigned to CTI. The contract provides that it is assignable "in connection with" any sale of

---

13. The Court notes that although Plaintiff's Amended Complaint asserts that it is seeking to enforce its rights with respect to all 1,000,-000 CATI shares, in oral argument on September 20, 1999, Plaintiff's counsel stated that Plaintiff was only seeking this right as against Defendant Breedon for 500,000 CATI shares.

14. The Supreme Court has determined that courts may not consider challenges to a contract's validity or enforceability as defenses against arbitration. *See Prima Paint*, 388 U.S. at 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). The Ninth Circuit has read *Prima Paint* as "demand[ing] that arbitration clauses

be treated as severable from the documents in which they appear unless there is clear intent to the contrary. An arbitration clause may thus be enforced even though the rest of the contract is later held invalid by the arbitrator." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 476 (9th Cir.1991).

15. Plaintiff erroneously labeled this claim as "Count IX." *See* Pl.'s Am. Compl. at 13.

16. Defendant's employment contract was signed by William Simmons as Chairman/CEO of Computertime. At that time, Simmons was the Chairman of both CATI and CTI.

all or substantially all of ComputerTime's assets.

In light of the foregoing, the Court finds that it appears Defendant's employment contract was entered into in contemplation of the Sale of Assets Agreement. The unemployment contract was "effective" just three days prior to the execution of the Sale of Assets Agreement. Moreover, the Sale of Assets Agreement provides that "Seller's desire to sell and Buyer's desire to buy is contingent upon and coupled with agreements made or to be made by and between Seller and Buyer." The Agreement further provides that ComputerTime was to sell all of its assets, including all outstanding contracts, whether or not such have come to fruition. It appears that the parties contemplated Defendant's employment contract as an intangible asset, to be sold according to the Agreement to Plaintiff CTI. Although Defendant's alleged acts of trespass, intentional damage

to property, breach of employment contract, and breach of fiduciary duty are strongly associated with Defendant's employment contract, Plaintiff's claim contains allegations that appear to relate to the Sale of Assets Agreement.[17]

Because Plaintiff's claims are not clearly outside the scope of the Sale of Assets Agreement, the Court must rule on the side of arbitrability.[18] The Court thus finds that all of Plaintiff's claims are subject to arbitration.

#### b. *Defendant's Counterclaims and Third–Party Claims*

■ Defendant's Counterclaims and Third–Party Claims also fall under the purview of the Agreement's Arbitration Clause, as these claims are under or relate to the Sale of Assets Agreement. Specifically, the Court notes that Defendant's Counts I, II and IV allege that Plaintiff and Third–Party Defendants committed libel and slander per se and intentionally

17. The Court notes that in an unpublished opinion, the Eastern District of Pennsylvania confronted an issue similar to the one at bar. In *Steele v. Control Fluidics, Inc.*, 1985 WL 4299 (E.D.Pa. Dec.9, 1985), the Eastern District of Pennsylvania determined that an employment contract arose under or related to an asset purchase agreement similar to the one in the instant case. *Id.* at *3. The *Steele* parties originally signed a contract containing no arbitration clause, which provided that the defendant would employ the plaintiff and purchase the assets of plaintiff's corporation. *See id.* at *2. The parties subsequently entered into more specific agreements: an asset purchase agreement, which contained an arbitration clause, and an employment agreement, which did not. *See id.* The asset purchase agreement provided that "[a]ny controversy or claim arising out of, or relating to, this Agreement, or the making, performance, or interpretation thereof, shall be settled by arbitration." *Id.*

The *Steele* plaintiff then filed a claim against the defendant, which included allegations of common law fraud, conversion, and breach of employment contract. *See id.* at *4–5. The court determined that because "[a]ll of the plaintiff's allegations either incorporate, refer to, or relate to the asset purchase agreement," the arbitration clause applied to all of plaintiff's claims. *Id.* at *3. This included the wrongful termination claim, de-

spite that the employment contract did not contain an arbitration clause.

Here, although the parties did not sign an initial contract explicitly providing for both an employment and sale of assets agreement, the parties entered into an employment contract that provides for its assignability upon the sale of all the assets of ComputerTime, and was "effective" just three days before the execution of the Sale of Assets Agreement. Thus it appears that the parties entered into each agreement in contemplation of the other. Moreover, although the Sale of Assets agreement does not explicitly mention it, Defendant's employment contract appears to be an intangible asset that ComputerTime sold according to the Sale of Assets Agreement.

18. The Court notes that Defendant's employment agreement contains a venue clause that provides that "all actions or proceedings arising directly or indirectly from this Agreement shall be litigated in Third Circuit Court for the State of Hawaii, Kona division or as appropriate in the United States District Court for the State of Hawaii." Plaintiff's counts, however, appear to fall under the purview of the Sale of Assets Agreement. Thus, the Court is faced with claims that the parties both agreed to have judicially determined and apparently agreed to arbitrate. The policy that all ambiguities be resolved in favor of arbitration must govern.

inflicted emotional distress upon Defendant by suggesting that the latter stole CATI or CTI property, and converted Defendant's personal property. What exactly was CTI property is an issue directly relating to the Sale of Assets Agreement.

 Defendant's Count III ("Invasion of Privacy") similarly is under or relates to the Sale of Assets Agreement. During oral argument on September 20, 1999, Plaintiff and Third–Party Defendants' counsel asserted that this claim relates to the Agreement in that the e-mail account with which Defendant alleges Plaintiff and Third–Party Defendant interfered was a corporate account arising from Defendant's employment with CTI. Because this claim is related to Defendant's employment and the termination thereof, it too is "under or related to" the Sale of Assets Agreement and is thus an arbitrable claim.[19]

Hence, the Court finds that in satisfaction of the fourth requirement governing the applicability of the FAA, the issues involved in this case are referable to arbitration.

**B. *Defendant and Third–Party Defendants Baugh and Simmons, as Agents of ComputerTime, CTI, and CATI, are Subject to the Agreement's Arbitration Clause***

 Because the Court has determined that the FAA is applicable to the Agreement, the Court now turns to the question whether Defendant, in his individual capacity, is subject to the Agreement's arbitration clause, and whether Third–Party Defendants Baugh and Simmons can invoke

the arbitration clause. Defendant claims that because he was not a party to the Agreement he cannot be compelled to arbitrate the claims at issue. He further claims that because he never entered into any written agreement with Third–Party Defendants Baugh and Simmons, he is not subject to arbitration. The Court disagrees. Although Defendant is being sued in his individual capacity, he is a signatory party to the Agreement, and under agency principles, he and Third–Party Defendants Baugh and Simmons are subject to the Agreement's arbitration clause and must arbitrate all disputes under or relating to the Agreement.[20]

 Federal courts have consistently afforded agents, employees, and representatives the benefit of arbitration agreements entered into by their principals to the extent that the alleged misconduct relates to their behavior as officers or directors or in their capacities as agents of the corporation. *See, e.g., Britton v. Co-op Banking Group,* 4 F.3d 742, 745 (9th Cir.1993) (holding no standing to compel arbitration, but noting that "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles"); *Roby v. Corporation of Lloyd's,* 996 F.2d 1353, 1360 (2d Cir.1993) (finding nonsignatories as employees or disclosed agents of entity that is a party to arbitration agreement could compel arbitration); *Lee v. Chica,* 983 F.2d 883, 887 (8th Cir.1993) (holding that nonsignatory defendant, as signatory's employee and agent, could be compelled to arbitrate plaintiff's claims against

19. *See* discussion *supra* regarding Plaintiff's Counts I, V, and VII, which relate to Defendant's employment contract.

20. Non-signatories may be bound by arbitration agreements entered into by others pursuant to five different theories: "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel." *American Bureau of Shipping v. Tencara Shipyard S.P.A.,* 170 F.3d 349 (2d Cir. 1999). Here, the most likely theory is agen-

cy, as Defendant clearly served as agent of ComputerTime when signing the Agreement "as President of, and on behalf of" Computer-Time. Furthermore, the Court has previously decided the alter ego issue in its Order Granting Partial Summary Judgment on Count III of Plaintiff's Claim. Thus, the Court analyzes the application of arbitration clauses to nonsignatories according to agency theory and refrains from addressing the remaining theories.

him arising out of the agreement); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1121 (3d Cir. 1993) (finding arbitration agreement between pension plan trustees and securities broker applied to broker's nonsignatory financial consultant as agent and to broker's nonsignatory sister corporation, noting that "[i]n keeping with the federal policy favoring arbitration, we share the views of the Courts of Appeals for the Sixth and Ninth Circuits and will extend the scope of the arbitration clauses to agents of the party who signed the agreement"); *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281–82 (6th Cir.1990) (finding nonsignatory defendants entitled to arbitration as agents of the signatory defendant, "follow[ing] the well-settled principle affording agents the benefits of arbitration agreements made by their principal"); *Letizia*, 802 F.2d at 1188 (holding arbitration clause in customer agreement between brokerage firm and customer applicable to nonsignatory employees of brokerage firm, noting that "[o]ther circuits have held consistently that nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles," string citing cases); *Hartford Fin. Sys., Inc. v. Florida Software Servs., Inc.*, 550 F.Supp. 1079, 1086–87 (D.Me. 1982) (finding that nonsignatory individual partners may be bound contractually to an arbitration clause, noting that "[i]t is clear that nonsignatories to a contract containing an arbitration clause may be deemed parties thereto, through ordinary contract and agency principles"). Thus, agents, employees, and representatives, although nonsignatories to a contract, may be required to submit to arbitration under ordinary contract and agency principles. Moreover, the court may uphold arbitration agreements against parties where the interests of such parties are directly related to, if not congruent with, those of a signatory. *Isidor Paiewonsky Assoc., Inc. v. Sharp Properties, Inc.*, 998 F.2d 145, 155 (3d Cir.1993). The Sixth Circuit has reasoned that if the rule were otherwise, a party could easily "avoid the practical consequences of an agreement to arbitrate by naming non-signatory parties as [defendants] in his complaint or signatory parties in their individual capacities only [and] the effect of the rule requiring arbitration would, in effect, be nullified." *Arnold*, 920 F.2d at 1281.

The *Arnold* court determined that because plaintiff's claims related "to the nonsignatory defendants' behavior as officers and directors or in their capacities as agents of the Arnold Corporation," under principles of agency law, the nonsignatory defendants could compel arbitration. *Id.* at 1282. Moreover, the court reasoned that "the language of the arbitration agreement indicates that the parties' basic intent was to provide a single arbitral forum to resolve all disputes arising under the ... agreement." *Id.*

Similarly, in the instant case, the Agreement contained language which unmistakably evidences the parties' intent to arbitrate all controversies which might arise between them. Both Simmons, Baugh, and Defendant were agents and officers of CATI and ComputerTime. Defendant Breedon executed the Agreement as President of ComputerTime. *See* Def.'s Answer to Pl.'s Am. Compl. ¶ 15. He further acted as ComputerTime's representative in preparing the Agreement's Exhibit A, which identifies and values the assets sold. Additionally, Defendant participated in negotiations relating to the sale. Thus, Defendant, as an agent, employee, and representative of ComputerTime, can be compelled to arbitrate any disputes arising under or relating to the Agreement he signed as President of ComputerTime. Furthermore, Third–Party Defendants Baugh and Simmons, as agents, officers, and representatives of CATI, may enforce the arbitration agreement against Defendant.

### C. *The Court Must Grant a Stay Pending Arbitration*

 The Federal Arbitration Act provides that where the court determines

that an issue is governed by an arbitration clause, court proceedings must be stayed to permit arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

21. The governing Hawaii statute contains a similar provision. *See* HRS § 658–5, *supra* note 5. The Intermediate Court of Appeals of Hawaii elaborated upon this provision: "[I]f a suit is brought upon five issues and one issue is referable to arbitration, the circuit court must stay the trial of the five issues until the one issue is arbitrated ...." *Rainbow Chevrolet, Inc. v. Asahi Jyuken (USA), Inc.*, 78 Hawai'i 107, 890 P.2d 694 (1995).

22. Additionally, if litigation involves some parties who are not subject to an arbitration agreement, and others who are, the Supreme Court has determined that "it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court ... as a matter of its discretion to control its docket." *Mercury Constr.*, 460 U.S. at 20 n. 23, 103 S.Ct. 927.

23. The Court notes that where resolution of the issues sought to be arbitrated could obviate the need for future litigation, court action may be dismissed without prejudice. *See, e.g., A.M. Castle & Co. v. United Steelworkers*, 898 F.Supp. 602, 614 (N.D.Ill.1995) (dismissing company's claim where same issue raised by union is pending in arbitration); *Transcaribbean Motors Transport, Inc. v. Union de Tronquistas de P.R., Local 901*, 553 F.Supp. 362, 364 (D.P.R.1982) ("In certain cases the action must be dismissed without prejudice where there is no problem of a statute of limitation and the issues presented to the arbitrator could obviate the need for future litigation."). *But see Summer Rain v. Donning Co./Publishers, Inc.*, 964 F.2d 1455, 1461 (4th Cir.1992) (determining that where it would

9 U.S.C. § 3.[21] The federal courts have interpreted this provision to "enable litigation to be stayed pending arbitration even if only one of the issues in the litigation is subject to an agreement to arbitrate."[22] *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 529 (7th Cir.1996). "[T]he decision to stay the litigation of non-arbitrable claims or issues is a matter largely within the district court's discretion to control its docket." *American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88 (4th Cir.1996). Moreover, if non-arbitrable issues depend on arbitrable issues, or if resolution of arbitrable issues would render the district court's ruling on the non-arbitrable issues unnecessary, "litigation on the non-arbitrable issues should be stayed pending arbitration."[23] *Summer*

"not be necessary for the district court to render a decision on the non-arbitrable issue of the determination of royalty amounts if the arbitrable issues [breach of publishing contract, among others] are decided in favor of the defendants," litigation on the non-arbitrable issues that depend on arbitrable issues "should be stayed pending arbitration"). Furthermore, if all the claims involved in an action are arbitrable, some courts may dismiss the action as opposed to staying it. *See, e.g., Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 179 (3d Cir.1998); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *Dancu v. Coopers & Lybrand*, 778 F.Supp. 832, 835 (E.D.Pa.1991), *aff'd*, 972 F.2d 1330 (3d Cir.1992). This Court, however, agrees with the analysis of *Bosinger v. Phillips Plastics Corp.*, 57 F.Supp.2d 986 (S.D.Cal.1999):

> The Court declines to dismiss the action. While the Ninth Circuit apparently finds it permissible that a district court dismiss rather than stay—as provided for in the Act—an action, the cases so holding provide little guidance as to when dismissal should be chosen over a stay. Other authority so allowing does so on the logic that staying an action when all the issues raised are arbitrable and must be submitted to arbitration would serve "no purpose." Perhaps that may be true, although either party may ask a court to review the arbitrator's award or lack thereof based on the defenses set forth at 9 U.S.C. §§ 9–12. More important, the clear language of Section 3 mandates a stay and not dismissal. Without better guidance from this Circuit, the Court chooses to rely on the clear statutory language.

*Rain v. The Donning Company/Publishers, Inc.,* 964 F.2d 1455, 1461 (4th Cir. 1992) (holding that the district court should stay litigation pending arbitration of arbitrable issues where non-arbitrable litigation may become unnecessary).

In the instant case, the Court has determined that both Plaintiff's and Defendant's claims contain disputes that are referable to arbitration. Thus, it is necessary that the Court stay the present proceedings, pending arbitration.

## II. THE PARTIES' RESPECTIVE PARTIAL SUMMARY JUDGMENT MOTIONS ARE NOT FOR JUDICIAL DETERMINATION

Both Defendant and Third–Party Defendants have filed Motions for Partial Summary Judgement with respect to Counts I and II of Defendant's Counterclaim and Third–Party Complaint. Because the Court has found that these claims must be arbitrated, the Court concludes that these motions are inappropriate for judicial determination.

## III. THE COURT DENIES THIRD–PARTY DEFENDANTS SIMMONS AND BAUGH'S MOTION FOR ORDER TO SHOW CAUSE AGAINST DEFENDANT/THIRD PARTY PLAINTIFF BREEDEN REGARDING BREEDEN'S 6/7/99 AFFIDAVIT

Third–Party Defendants Simmons and Baugh contend that Defendant knowingly and intentionally misled the Court by falsely swearing that "the June 18, 1998 'Sale of Assets Agreement' included a ComputerTime 'Sale of Assets Agreement' Inventory Attachment." *See* Third–Party Defs. Simmons and Baugh's Mot. for Order to Show Cause at 2, 5. Defendant included in his Motion for Partial Summary Judgment a typed version of Exhibit "A" of the Sale of Assets Agreement. Defendant's typed list contains an alteration

to the original, as it is entitled "Computer-Time 'Sale of Assets Agreement' Inventory Attachment." The original contains no such title. Third–Party Defendants claim that Defendant committed fraud on the Court by presenting the typed version of Exhibit "A" as the original. *See id.* at 7.

Simmons and Baugh have moved to require Defendant to show cause as to why he falsely swore to the authenticity of a document that he altered and submitted to this Court in support of his Motion for Partial Summary Judgment. They rely on *Southwest Slopes, Inc. v. Lum,* 81 Hawai'i 501, 918 P.2d 1157, 1167 (1996), to support their motion. In that case, however, the Court was confronted with flagrant misrepresentations that the plaintiffs had used to obtain summary judgment, which motivated the court to vacate and remand the case. *See id.* at 1167. By contrast, in the instant case, the Court is merely confronted with a typed list that Defendant prepared, which is virtually identical to the hand-written portion of the Agreement's Exhibit "A."

█ The Court takes note that Defendant's typed version of Exhibit "A" is not the true original. The Court also recognizes that Defendant intended the typed version solely for the convenience of this Court and did not intend to misrepresent the content of the original Exhibit "A". The Court thus finds it unnecessary to grant Third–Party Defendants Simmons and Baugh's Motion for Order to Show Cause.

### CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff and Third–Party Defendant's Motion for Arbitration. The Court ORDERS the parties to proceed with arbitration of all of Plaintiff's Counts and Defendant's Counterclaims and Third–Party Claims. The Court hereby stays this action pending arbitration. The Court

*Id.* at 993 n. 7. This Court, too, elects the more conservative approach of staying the

action pending arbitration as opposed to issuing a dismissal.

further declines to rule on the parties' respective Motions for Partial Summary Judgment, and DENIES Third–Party Defendants Simmons and Baugh's Motion for Order to Show Cause.

IT IS SO ORDERED.